**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Mary Stone (Pseudonym), | : | |
| | : | |
| Plaintiff, | : | Case No. |
| v. | : | |
| | : | Judge to be assigned |
| Mahoning County, *et al.* | : | Magistrate Judge to be assigned |
| | : | |
| Defendants. | : | |

---

**NOTICE OF REMOVAL**

---

In accordance with 28 U.S.C. §§1331, 1441, and 1446, Defendants, Mahoning County, Warden William Cappabianca, Captain Kenneth Kountz, and Captain Joseph Hood, by and through counsel, hereby respectfully file this Notice of Removal of *Mary Stone (Pseudonym) v. Mahoning County, et al.*, Mahoning County, Ohio, Court of Common Pleas No. 2023-CV-00834. See also Fed. R. Civ. P. 81(c). In support of this Notice of Removal, Defendants state as follows:

1.      On or about May 3, 2023, Plaintiff Mary Stone initiated *Mary Stone (Pseudonym) v. Mahoning County, et al.*, Mahoning County, Ohio, Court of Common Pleas No. 2023-CV-00834, by filing her Complaint in the Mahoning County Common Pleas Court. The Complaint is attached hereto. (Exhibit 1).

2.      Counsel for Defendants received waivers of service on or about May 8, 2023. Waivers of service were executed on behalf of the Defendants.  Their Answer is due on July 7, 2023.

3.      Plaintiff alleges that Defendants violated Plaintiff's civil rights pursuant to the "United States Constitution under 42 U.S.C. § 1983 (including violations of the 14th Amendment

to the Constitution), with pendent claims for violations of Ohio law, including statutes establishing civil liability for criminal acts like dereliction of duty." (Exhibit 1, ¶ 1).

4.      Plaintiff seeks monetary and punitive damages against Defendants, plus attorney fees.

5.      The constitutional claims asserted by Plaintiff state Federal Questions pursuant to 28 U.S.C. §1331. As a result, this case is being removed on Federal Question grounds.

6.      This Court has original jurisdiction over the underlying matter pursuant to 28 U.S.C. §§1331, 1343, and 1441. Further, Defendants respectfully request that this Court exercise its supplemental jurisdiction over any of Plaintiff's attempted state law claims. See 28 U.S.C. §1367.

7.      Attorneys Daniel T. Downey, Jennifer M. Meyer, and Angelica M. Jarmusz represent all Defendants in this matter.

8.      Removal was commenced sooner than 30 days after Defendants first received a copy of the Complaint.

9.      Copies of all process, pleadings, and documents served upon Defendants are attached in accordance with 28 U.S.C. §1446 (a).

**WHEREFORE**, Defendants hereby respectfully and unanimously remove this lawsuit to this Honorable Court.

Respectfully Submitted,

s/ Daniel T. Downey
Daniel T. Downey (0063753)
Jennifer M. Meyer (0077853)
Angelica M. Jarmusz (0092249)
**FISHEL DOWNEY ALBRECHT & RIEPENHOFF LLP**
7775 Walton Pkwy, Suite 200
New Albany, Ohio  43054
(614) 221-1216 – Telephone
(614) 221-8769 – Fax
ddowney@fisheldowney.com
jmeyer@fisheldowney.com
ajarmusz@fisheldowney.com
*Attorneys for Defendants Mahoning County, Warden*
*Cappabianca, Captain Kountz, and Captain Hood*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing ***Notice of Removal*** was filed electronically through the

Court's system this 7th day of June 2023. A true and accurate copy of the foregoing filing has also

been electronically served upon Plaintiff's counsel, with regular U.S. Mail to follow, this 6th day

of June 2023.

s/ Daniel T. Downey
Daniel T. Downey (0063753)
**FISHEL DOWNEY ALBRECHT & RIEPENHOFF LLP**
*Attorneys for Defendants Mahoning County, Warden*
*Cappabianca, Captain Kountz, and Captain Hood*

ELECTRONICALLY FILED
2023 May 03 PM 10:50
Anthony P. Vivo, CLERK OF COURT - MAHONING

IN THE COURT OF COMMON PLEAS
GENERAL DIVISION
MAHONING COUNTY, OHIO

| | |
|---|---|
| **Mary Stone** (Pseudonym) c/o The Chandra Law Firm LLC The Chandra Law Building 1265 W. 6th Street, Suite 400 Cleveland, OH 44113-1326 Plaintiff, v. **Mahoning County** c/o Mahoning County Sheriff's Office 110 5th Avenue Youngstown, Ohio 44503 **William Cappabianca** Warden, Mahoning County Sheriff's Office 110 5th Avenue Youngstown, Ohio 44503 **Kenneth Kountz** Former Assistant Warden, Mahoning County Sheriff's Office 110 5th Avenue Youngstown, Ohio 44503 **Joseph Hood** Captain, Mahoning County Sheriff's Office 110 5th Avenue Youngstown, Ohio 44503 Defendants. | Case No. Judge |

**COMPLAINT WITH JURY DEMAND**

**NATURE OF ACTION**

**2023 CV 00834**

1.      This is a civil-rights action for violations of the United States Constitution under 42 U.S.C. § 1983 (including violations of the 14th Amendment to the Constitution), with pendent claims for violations of Ohio law, including statutes establishing civil liability for criminal acts like dereliction of duty.

2.      For 13 years, Deputy Stone was a dedicated and diligent reserve deputy and then deputy with the Mahoning County Sheriff's Office who had never been subjected to disciplinary action regarding any aspect of her work performance. Despite this, she ultimately faced every female deputy's worst fear—she was violently assaulted and raped by a male inmate while performing her duties.

3.      Had they taken reasonable and appropriate steps to secure an inmate whom they knew was dangerous, Jail supervisors could have prevented the victimization of Deputy Stone. All deputies deserve a safe and secure place to work, and the Sheriff's department must be held accountable when its leaders fail to take basic steps to protect their employees.

**PARTIES**

4.      Plaintiff Mary Stone is a Mahoning County Sheriff's deputy and survivor of sexual assault. She resides in Mahoning County, Ohio.

5.      Defendant Mahoning County is a political subdivision as defined in Ohio Rev. Code § 2744.01. Mahoning County is liable for acts and omissions taken under its customs, policies, patterns, or practices. Mahoning County is also responsible for training and supervising its employees in carrying out their duties in a lawful manner.

6.      Defendant William Cappabianca was at all relevant times the warden for the Mahoning County Sheriff's Office and acting under color of state law. He is sued in both his official and personal capacities.

7.      Defendant Kenneth Kountz was at all relevant times the assistant warden for the Mahoning County Sheriff's Office and acting under color of state law. He is sued in both his official and

**2023 CV 00834**

personal capacities.

8.     Defendant Joseph Hood was at all relevant times a captain for the Mahoning County Sheriff's Office and acting under color of state law. He is sued in both his official and personal capacities.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction because the suit concerns state-law violations by Defendants and the amount in controversy exceeds $25,000.

10.    The suit concerns civil liability for acts that occurred in this county.

11.    Venue in the instant matter is proper in the Mahoning County Court of Common Pleas under Ohio Rule of Civil Procedure 3(B), based upon the following:

     a.   One or more Defendants has his principal place of business in Mahoning County, Ohio;

     b.   One or more Defendants conducted the activity giving rise to the claims for relief in Mahoning County, Ohio;

     c.   A public officer maintains his principal office in Mahoning County, Ohio, and this suit is brought against the officer in the officer's official capacity;

     d.   All or part of the claims for relief arose in Mahoning County, Ohio.

## FACTUAL BACKGROUND

**In April 2022, inmate Rondell Harris was transferred from the maximum-security Ohio State Penitentiary to the Mahoning County Jail, where he swiftly developed a reputation for inappropriate conduct.**

12.    Rondell Harris's administrative file includes record of a prior conviction for attempted gross sexual imposition in Marion County Common Pleas Court Case No. 2009-CR-0237 against a social worker in the Marion County Indian River juvenile institution. Consequently, Inmate Rondell Harris must register as a Tier I Sexual Offender.

13.     Soon after his arrival at the Mahoning County Jail, Harris's disruptive and grotesque behavior became apparent to staff and supervisors. In recognition of this, Jail staff and supervisors placed Harris in the disciplinary unit.

14.     Jail staff and supervisors later transferred Harris to the medical unit and placed him on suicide watch, but when the watch was lifted, Jail supervisors failed to transfer him back to the disciplinary unit. Harris unjustifiably remained in the medical unit—as opposed to a disciplinary holding cell where he belonged.

15.     When Deputy Stone first encountered Harris in the medical unit, Harris was known to be a chronic masturbator.

16.     When Deputy Stone was assigned to guard the medical unit, Harris stood close to the door of his cell, naked, and masturbated in front of her. Deputy Stone reported Harris's behavior, as she was trained to do.

17.     In addition to the incident described above, Harris masturbated in front of at least five other deputies in early April 2022—each Deputy logged Harris's behavior.

2023 CV 00834

**As would be expected, Harris's misbehavior continued and escalated to include writing letters to female staff members filled with explicit comments and inappropriate requests.**

18.     In mid-April 2022, Harris wrote a sexually suggestive note to a female staff member:

~BY THE WAY~

I'MA VERY SEXUAL PERSON BABE SO EXCUSE MY LANGUAGE

XOXO~ YOU LOOK BEAUTIFUL TODAY.~~ XO

SHE'LL PUT YOU ON HOLD - ALL I WANT IS YOU - I REALLY MISS AND MY HISTORY BABE - I REALLY WANNA CONTACT MY SISTER

GOOD MORNING M'AMOR,        SONG: "In my Feelings" - BY: KEY GLOCK (TDK) WHETHER YOU BELIEVE ME OR WHAT? BUT ON MY SOUL, YOU SAY YES AND FUCK WITH ME, IT'S ALL ABOUT YOU, ON ALLAH. I'M THE KINDA MAN, THAT WOULD NEVER SWITCH OUT A DIME 4 A PENNY! YOU TOO BLESSED UP 4 ME 2 ENTERTAIN THESE MEDIOCRE BASIC BITCHES. TOO BE FRANK, YOUR THE DEFINITION OF A BAD BITCH! AND I MEAN THAT WITH THE UPMOST RESPECT! I'M TRYNA HAVE YOU PARKING A BENTLY BASTAYGA OR ROLL ROYCE TRUCK NEXT 2 THAT RANGE. I CAN DO THAT FROM IN HERE WITH YOUR ASSISTANCE. IT'S $1200 A SHEET ON THE K-2 SIDE AND $150 A STRIP, THAT MEHH SALE QUICKS TOO. BUT WHEN I GO FEDERAL THAT ALL INCREASES. IT'S $2500 - 5,000 A SHEET AND $250 - 600 A STRIP A 1,000 FOR A 8TH OF MEHH. IF I COME IN WITH IT SAY AS MY COURT DOCKET AND INDICTMENT TRANSCRIPT 4 MY FED CASE #64909-060 THEY CAN'T TAKE IT FROM ME. ALL I NEED IS 4 YOU 2 MAKE OR GIVE ME THE CASHAPP/CHIME 2 SEND THE MONEY AS I MAKE IT. #TRUST. BUT AGAIN THATS ONLY IF YOU TRYNA GO INTO BUSINESS WITH ME. I WANT YOU. THE BAG IS JUST EXTRA. I'M DEEPLY ATTRACTED 2 YOU PHYSICALLY AND I LOVE YOUR OUTGOING PERSONA-LITY. YOUR A FREE SPIRIT LIKE ME #SAGITTARIUS. I'M DETERMINED 2 WIN YOUR LOVE 'N LOYALTY. TEACH ME HOW 2 BE EVERYTHING YOU WANT AND NEED. I'MA FAST LEARNER AND IT WOULD BE MY PLEASURE. I HOPE YOU SEE MY POTENTIA

(440) 1055-8494 @RICHARDSNUGGET

19. In the letter, Harris stated—among other things—that he was "a very sexual person" and thought the female staff member was "beautiful."

20. Harris also asked the staff member to help him sell drugs and told her, "I'm deeply attracted [to] you physically."

21.    Harris asked the female staff member to send him "sexy" photos of herself and told her that he had a foot fetish:



22.    The female staff member handed the note to a male deputy on duty, and that deputy reported the note in the Jail's computer system.

23.    Then, despite knowing of Harris's deviant sexual behavior and desires, and his attempted smuggling of contraband, Jail staff and supervisors moved Harris from the more secured cell located nearer to the front of the unit to another cell within the medical unit—a cell that was out of range of security cameras and less secure than other cells in the unit.

24.  Shortly after the move, Harris wrote another note to the same female staff member:

**2023 CV 00834**

- CREATE A EMPIRE. MY EX RAN OFF LAST YR WITH 20K
WE MADE 2GETHER ON SOME PETTY SHYESTY SHIT ADISH/AIN.
THATS WHY I'M DOWN ON MY LUCK RIGHT NOW. BUT WHERE
THERE IS A WILL THERE'S A WAY. ITS SO DRY ON THE
K-2/STRIPS SIDE WE'D MAKE A KILLIN! THATS WHY
I CAME 2 MEDICAL B/C THE REST OF THESE BROADS
TAKIN OR NOT 4 DA STRUGGLE, CHASIN CLOUT OR SOME DICK
FROM A GANGSTA. I'M COOL ON SACK CHASERS. I'M LOOKIN 4
THAT ONE, THATS DOWN TO MATCH MY ENERGY AND
I'LL GIVE MY ALL TOO KEEP HER. IF I HAD A PHONE I
COULD MAKE POWER PLAYS 4 US AND BE ABLE TO REALLY
CONNECT WITH YOU. THIS SPOT SWEET 4 REAL. ITS PLUGS IN
MY CELL. ALL I NEED IS A S-MAIL ANDROID/CHARGER, SO I
CAN TAPE IT 2 THE BOTTOM OF THE SINK. THEY'LL NEVER
FIND IT. PLUS MY CELL IS IN THE BLINDSIDE OF THE CAMERA
WHEN YOU COME TO MY DOOR AND PUT YOUR BACK/OR THE CART
IS THE OTHER CAMERA'S VIEW IT CANT SEE NOTHIN YOU PASS
ME. I'M NOT LEAVIN FROM MEDICAL UNTIL BAG SECURED IF
THAT B/C YOU DON'T HAVE 2 MOVE DA BAG IF YOU DON'T WANNA.
ALL I NEED IS YOU BY MY SIDE AND I'M SATISFIED, I'LL
LEAVE THESE OTHER HOES ALONE, ON ALLAH. I JUST NEED A 191
BABY THATS GONE RIDE. GIVE ME AN ADDRESS/P.O.BOX TO
BE ABLE 2 WRITE YOU DISCREETLY AND GET A TXTAPP # 4 ME
2 BE ABLE 2 CALL SECURELY. I KNOW WHAT NOT 2 SAY BABE.
LEAVE YOUR CONTACT INFO WITH MY SISTER SHAR'NAE (469)605-XXXX
@ RICHIES.NUGGET ON FACEBOOK, SHE LIVE IN TEXAS, I ALREADY
TOLD HER 2 EXPECT SOME REACHING OUT ON MY BEHALF AND TO
STORE THEIR INFO. AGAIN A PHONE WOULD BE EASIER AND SAFER
I'LL PREPAID/TRACPHONE UNLIMITED, NO TRACE. IF I EVER GET CAUGHT,
CAUGHT. I'M TAKEN ALL THE WEIGHT/NO SNITCHEN!. DEATH B4 DISHONOR.
YOUR WAY TOO VALUABLE TO LOSE. THINK ABOUT IT/ME. THEY CALL ME "HOLLYWOOD" XOXOXO

25.    In this note, Harris again expressed a desire to touch the female staff member and praised her "sexy, curvaceous figure."



26.    Harris told the female staff member that his new cell was "sweet" because it contained plugs that would support a phone charger and was "in the blindside of the camera."

27.    Harris explained to the female staff member how she could pass him items without it being captured on camera.

28.    As with the first note, this note was discovered by Jail staff members and logged in the computer system for Jail supervisors to review.

**As Jail supervisors did nothing to protect their own deputies, Harris's attempts to engage female staff members escalated further to include the deputies assigned to guard his cell.**

29.    In mid-April, Harris wrote a note to a female deputy asking her to smuggle drugs and a phone into the Jail for his use.

Case: 4:23-cv-01138-JRA  Doc #: 1  Filed: 06/07/23  14 of 37.  PageID #: 14

30.     Then, on or around May 3, 2022, Harris handed yet another note to a different female deputy:

AND loyalty you must follow my lead B/c I'm in a position where 4 this 2 work you must correspond with me discreetly and stay in tune with my agenda. All I got is my sister down in Texas, @rphasnweeet get @ her on the book and we'll stay connected thru her. I'm bout2 cop out 2 this stupid ass case, run my time concurrent with my fed violation 24 months, and slide. So I can be able 2 really communicate with you without Jeopardizing your career.

I wanna get 2 know you better then you know yourself. Thats the only way I can love you and make you happy and heal you from whatever pain/struggle life has brung you. I'm in a position right now where we can get away with alot, due 2 how this cell is. I wanna kiss you, and hug on you, it's been over4year since I've felt something soft on my arms and your lips look too tempting(lol) let me be your lol secret (wink) you can give me your # and a address 4/me 2 use 2 communicate discreetly when you bring me my food B/c we're off camera. On my soul I'ma put it in my contacts in code so it won't be detected but I'll remember it. I'm not gone give up til you my girl. I'm tryna give you a seed 2 strengthen our bond and show you I'm tryna lock it in oneway. I think you'd make a good mom. And I want a family, something 2 mark a new beginning. I've been thru alot and never really had no family, so I'd cherish you even more if you gave me that gift. I'm misunderstood 4real. I'ma good man ➝

The streets just got a hold of me
so young due to parents on drugs
and not having enough stability 2 really
focus on being a child.
I come from the trenches of Cleveland BABY/GIRL
I've been shot 3 times on 2 different
occasions. I'm tired of that life. I'm
tryna get out the city and start fresh.
I wanna be wherever you are.... B/c you
on your shit, you got to me together,
you not stuck up, your young sexy and
focused. I can read that.
I only ask that all that super friendly
shit stop with these other cats bitches.
When you start fuckin with me! B/c
it gives the wrong impression and
these niggas talk too much, thats why
I knew so much about you B4 I ever
even met you. These niggas y'all have you
jammed up if your not careful. Real talk
snitchen as a trend 4 these niggas now
a days. I'ma heartless felon, I stand on code,
death b4 dishonor. And never sacrifice your
Incent TIPS my (TIPS) @ HOLY2 FEDERAL
cts weak a/f now b/c alot of pic's get
Deleted (SMH) but my foster sister run my
shit now (Sharee) I'ma fallback on all these
hoez once you stamp it officall none of that
jackin, flertin, johain on miah! Just
2 prove 2 you im not takin, but you gotta
let me know you given me a chance. And willing
2 ride 4 me/baby girl. After that I'll give you all of me

31.    Harris reiterated in that note that he knew that, when the female deputy brought him food, his cell was out of the range of security cameras.



32.    And Harris expressed his desire to kiss and touch this deputy:



33.    As required by official policies, that deputy reported in the computer log and to a supervisor that Harris had handed her the note—and emphasized that Harris knew his cell was off-camera and was trying to get her to visit his cell.

34.    Fearing that Harris may attempt to pull her into his cell, the deputy bluffed to Harris that there were male deputies assisting her on her shift that evening. The deputy logged this into the computer system as well and noted her fear that Harris would attempt to touch her or harm her if he knew she was alone.

**2023 CV 00834**

35.    By this time, Jail supervisors had been made aware, on multiple occasions, of Harris's deviant sexual desires and his aggressiveness toward female deputies. For example, on April 12, 2022, one deputy-sergeant alerted jail supervisors of Harris's dangerousness via email:

**Budaker, Henry**

| | |
|---|---|
| From: | Budaker, Henry |
| Sent: | Tuesday, April 12, 2022 11:01 PM |
| To: | MCSOJailSupervisors |
| Subject: | Advise staff to keep an eye on this inmate. |
| Attachments: | Harris, Rondall 0069246.pdf |

I am sending this email as a precautionary measure.
On 04/12/2022 in Harris, Rondall  PID/0069246 was taken to C Pod and placed on suicide watch by medical. He also made comments about being homicidal.
This inmate is housed in C Pod with a notation made not to double bunk this inmate.
He was booked here on 04/06/2022. Since then he has earned numerous write-ups and appears to have no remorse for his infractions.
It appears that he self gratifies himself towards female staff on a regular basis.
When talking to him you could I could detect the hostility that he has and we should make sure Deputies keep close eye on him.
Stay safe.
Sgt.Budaker M-30

36.    As mentioned above, Harris was previously convicted in Marion County for a sexual attack on a social worker while he was incarcerated.

37.    Under Jail policies, supervisors on duty are required to check the prior deputy's log within a few hours of her shift. Yet no supervisors took appropriate actions to adequately secure Harris or move him to another cell within the security-camera range—despite being warned by at least two separate notes that Harris was aware that he was off-camera and was likely to engage in illegal actions in that cell.

38.    Lieutenants Gerald D'Angelo, Matthew Dugan, Salvatore Pascarella, and Joseph Varone were supervisors assigned to the Jail. Based on information and belief, Harris's behavior and notes were known to these Lieutenants, who informed their superiors.

39.     At this time, Defendant Warden William Cappabianca, Assistant Warden Kenneth Kountz, and Captain Joseph Hood were in charge of the Jail and supervised Lieutenants D'Angelo, Dugan, Pascarella, and Varone, as well as other Jail staff.

40.     Defendants Cappabianca, Kountz, and Hood had the authority and responsibility to take corrective and preventive measures against Harris when this information became known. Yet they failed to act—ultimately resulting in great and immeasurable harm to Deputy Stone.

**Following weeks of inaction and neglect by Jail supervisors, inmate Harris assaulted and nearly killed Deputy Stone.**

41.     Within days of Harris's note expressing a desire to sexually touch a female deputy, on or around May 5, 2022, Deputy Stone was assigned to guard the medical unit where Harris remained.

42.     Located within the medical unit is a dry-erase board with each inmate's name and background information, such as suicide watch, psychiatric, and other pertinent information. At the start of her shift, Deputy Stone read the dry erase board, which listed Harris as an inmate and stated "Do not move per Commander Kountz."

43.     Lieutenant Pascarella visited the medical unit that day and asked Deputy Stone why Harris was still on the medical unit and asked why he had not been transferred back to the disciplinary unit. Pascarella informed Deputy Stone that he was going to speak to Kountz as to why Harris had not been transferred.

44.     Deputy Stone was assigned to guard the unit—alone—as female deputies working in male units often were.

45.     After Harris returned from his daily hygiene and shower routine, he refused to provide Deputy Stone with his food tray and hair clippers, forcing her to approach his cell to collect the items.

46.     As she grasped the food tray that inmate Harris was handing back to her, Harris grabbed Deputy Stone, threw her radio in the corridor, and pulled her into his cell.

**2023 CV 00834**

47.     Deputy Stone valiantly fought Harris for four minutes, but she was unable to hold him off.

48.     As she screamed for help, he strangled her, threw her to the ground, and ripped her clothes.

49.     Rondell Harris violently raped Deputy Stone and then locked her in his cell while he roamed the unit unattended.

50.     Deputy Stone was alone. No one came to help her.

51.     The deputies assigned to work central control were responsible for monitoring surveillance equipment. Had they done so, the attack Deputy Stone endured would have been discovered immediately and she would not have been violently raped and nearly strangled to death.

52.     Deputy Stone remained locked in the cell for at least ten minutes, until two sergeants finally arrived and found Harris standing at the entrance door to the housing unit.

53.     As Deputy Stone was taken to the hospital, she begged her supervisor to secure a warrant and ensure that physical evidence was taken from Harris's person before he showered.

54.     Harris is now being criminally prosecuted for the attack and rape.

55.     Since this horrific attack, Deputy Stone has been experiencing severe physical and emotional trauma—trauma that could have been avoided and occurred, in part, due to deliberate indifference, recklessness, and negligence by Mahoning County Sheriff's Office personnel.

56.     Shortly after the attack, Sheriff Jerry Greene expressed his disgust at the mishandling this matter. Greene demoted Defendant Assistant Warden Kountz and transferred Defendant Captain Hood to a different position outside of the Jail.

## CLAIMS

### CLAIM 1
### CIVIL LIABILITY FOR CRIMINAL ACTS (DERELICTION OF DUTY) UNDER OHIO REV. CODE §§ 2307.60 AND 2921.44(C) AGAINST WILLIAM CAPPABIANCA, KENNETH KOUNTZ, AND JOSEPH HOOD IN THEIR PERSONAL CAPACITIES

57.     Plaintiff incorporates all previous allegations.

**2023 CV 00834**

58.     Under the relevant part of Ohio Rev. Code § 2921.44(C)(3), "No officer, having charge of a detention facility, shall negligently… Fail to control an unruly prisoner…" (Cleaned up.)

59.     Under the relevant part of Ohio Rev. Code § 2921.44(C)(5), "No officer, having charge of a detention facility, shall negligently… Fail to observe any lawful and reasonable regulation for the management of the detention facility."

60.     Under Ohio Rev. Code § 2901.22(D), "A person acts negligently when, because of a substantial lapse from due care, the person fails to perceive or avoid a risk that the person's conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, the person fails to perceive or avoid a risk that such circumstances may exist."

61.     Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action. Violations of Ohio Rev. Code §§ 2921.44(C) are criminal acts, indeed misdemeanors, under § 2921.44(F).

62.     Defendants have charge of the Jail and are empowered to make decisions regarding the housing of inmates and protection of Jail staff.

63.     Defendants failed to control Harris—an unruly prisoner—and/or failed to observe any lawful and reasonable regulation for the management of the detention facility. These failures included, but were not limited to:

   a.   Defendants transferred Harris to the medical unit and placed him on suicide watch. But when the watch was lifted, Defendants failed to transfer Harris back to the disciplinary unit where he belonged. Harris should not have remained on the medical unit even for psychiatric observation, which could have been accomplished while he was in general population or had he been moved to a separate housing unit for inmates with psychiatric issues who have difficulty functioning in general population.

**2023 CV 00834**

b.  When Harris's masturbation and exposure continued, Defendants placed him in a cell toward the back of unit, which was out of range of security cameras.

c.  Defendants left Harris in this cell despite knowing that he made several sexual advances toward Jail staff.

d.  Defendants placed a "Do not move" order on Harris in spite of his behavior.

e.  Defendants required deputies to work alone with dangerous inmates, such as Harris, including female deputies, despite available information documenting Harris's prior history of sexually assaulting a female staff member when he was previously incarcerated.

f.  Defendants failed to adequately staff the Jail resulting in Harris being able to attack Deputy Stone , lock her in his cell, and roam the Jail unattended for approximately ten minutes while Deputy Stone lay injured and helpless, until staff finally noticed Harris unattended while visiting the unit to speak to a different inmate regarding another matter.

g.  Defendants failed to collect/preserve evidence from Harris's person following the attack.

h.  Defendants failed to take any corrective and preventive measures after Harris wrote several sexually explicit notes and provided them to female staff—notes which foreshadowed Harris's inevitable attack on a female staff member.

64.    As a direct and proximate result of these actions, Deputy Stone has suffered and will continue to suffer economic and non-economic damages for which the named Defendants are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

**2023 CV 00834**

65. Defendants' acts were malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

**CLAIM 2**

**FOURTEENTH AMENDMENT VIOLATION UNDER 42 U.S.C. § 1983 FOR FAILURE TO TRAIN AND SUPERVISE EMPLOYEES RESULTING IN HARM TO PLAINTIFF AGAINST DEFENDANTS MAHONING COUNTY, WILLIAM CAPPABIANCA, KENNETH KOUNTZ, AND JOSEPH HOOD IN THEIR OFFICIAL AND PERSONAL CAPACITIES**

66. Plaintiff incorporates all previous allegations.

67. Defendants failed to take the reasonable, necessary, and proper steps to protect Deputy Stone from the violent rape and attack she suffered at the hands of inmate Rondell Harris. These included, but were not limited to:

a. Defendants transferred Harris to the medical unit and placed him on suicide watch. But when the watch was lifted, Defendants failed to transfer Harris back to the disciplinary unit where he belonged.

b. When Harris's masturbation and exposure continued, Defendants placed him in a cell toward the back of unit, which was out of range of security cameras.

c. Defendants left Harris in this cell despite knowing that he made several sexual advances toward Jail staff.

d. Defendants placed a "Do not move" order on Harris in spite of his behavior.

e. Defendants required deputies to work alone with dangerous inmates, such as Harris, including female deputies, despite knowing Harris's prior history of sexually assaulting a female staff member when he was previously incarcerated.

f. Defendants failed to adequately staff the Jail resulting in Harris being able to attack Deputy Stone, lock her in his cell, and roam the Jail unattended for approximately ten

**2023 CV 00834**

minutes while Deputy Stone lay injured and helpless, until staff finally noticed Harris

unattended and went to check on him.

g. Defendants failed to collect/preserve evidence from Harris's person following the

attack.

h. Defendants failed to take any corrective and preventive measures after Harris wrote

several sexually explicit notes and provided them to female staff—notes which

foreshadowed Harris's inevitable attack on a female staff member.

68. Defendants displayed a deliberate indifference to the actions leading up and causing Deputy

Stone's 's harm, failed to exercise due care, and acted in a reckless manner.

69. Defendants engaged in the above-mentioned adverse actions while acting under color of

state law.

70. Defendants were at all relevant times sufficiently empowered Mahoning County officials that

their acts constitute the customs, policies, and practices of Mahoning County. Mahoning County is

also responsible for training and supervising its employees in carrying out their duties in a lawful

manner. Greene is the highest-ranking official in the Mahoning County Sheriff's Office and

Cappabianca, Kountz, and Hood are the highest-ranking administrators in charge of the Jail. All are

policymakers.

71. As a direct and proximate result of these actions, Deputy Stone has suffered and will

continue to suffer economic and non-economic damages for which the named Defendants are

liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and

other terms, privileges, and conditions of employment.

72. Defendants' acts were malicious, in bad faith, performed in a wanton and reckless manner,

willful, egregious, and worthy of substantial sanction to punish and deter them and others from

engaging in this type of unlawful conduct.

**2023 CV 00834**

## CLAIM 3
### RECKLESS HIRING, TRAINING, SUPERVISION, DISCIPLINE, STAFFING, AND RETENTION UNDER OHIO LAW AGAINST DEFENDANT MAHONING COUNTY

73.    Plaintiff incorporates all previous allegations.

74.    Defendant Mahoning County failed to exercise due care and acted in a reckless manner in hiring, training, supervising, disciplining, staffing, and retaining the individual defendants.

75.    The individual defendants were unfit for their positions and duties, as was obvious from their harmful misconduct.

76.    Defendant Mahoning County's reckless conduct in this regard proximately caused Deputy Stone's injuries alleged above.

77.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Deputy Stone sustained damages.

## CLAIM 4
### FIFTH AND FOURTEENTH AMENDMENT VIOLATION UNDER 42 U.S.C. § 1983 FOR SUBSTANTIVE DUE PROCESS VIOLATION RESULTING IN HARM TO PLAINTIFF AGAINST DEFENDANTS MAHONING COUNTY, WILLIAM CAPPABIANCA, KENNETH KOUNTZ, AND JOSEPH HOOD IN THEIR OFFICIAL AND PERSONAL CAPACITIES

78.    Plaintiff incorporates all previous allegations.

79.    Under the Fifth and Fourteenth Amendment:

> [W]here a State creates a perilous situation that renders citizens more vulnerable to danger at the hands of private actors, a plaintiff may bring a substantive due process claim by establishing (1) an affirmative act by the State that either created or increased the risk that the plaintiff would be exposed to private acts of violence, *see Kallstrom v. City of Columbus,* 136 F.3d 1055, 1066 (6th Cir. 1998); (2) a special danger to the plaintiff created by state action, as distinguished from a risk that affects the public at large, *see id.;* and (3) "the requisite [state] culpability to establish a substantive due process violation," *Ewolski v. City of Brunswick,* 287 F.3d 492, 510 (6th Cir. 2002). We have described the "requisite culpability" factor as requiring "deliberate indifference" by the government entity when the entity "had time to deliberate on what to do." *Bukowski v. City of Akron,* 326 F.3d 702, 710 (6th Cir. 2003).

*Schroder v. City of Fort Thomas*, 412 F.3d 724, 727–28 (6th Cir. 2005).

80.     Under prong one, Defendants took the following affirmative acts that created and increased the risk of violence against Deputy Stone by Rondell Harris:

    a.  Defendants transferred Harris to the medical unit and placed him on suicide watch. But when the watch was lifted, Defendants failed to transfer Harris back to the disciplinary unit where he belonged.

    b.  When Harris's masturbation and exposure continued, Defendants placed him in a cell toward the back of unit, which was out of range of security cameras.

    c.  Defendants left Harris in this cell despite knowing that he made several sexual advances toward Jail staff.

    d.  Defendants placed a "Do not move" order on Harris in spite of his behavior.

    e.  Defendants required deputies to work alone with dangerous inmates, such as Harris, including female deputies, despite knowing Harris's prior history of sexually assaulting a female staff member when he was previously incarcerated.

    f.  Defendants failed to adequately staff the Jail resulting in Harris being able to attack Deputy Stone, lock her in his cell, and roam the Jail unattended for approximately ten minutes while Deputy Stone lay injured and helpless, until staff finally noticed Harris while visiting the unit on other business.

    g.  Defendants failed to collect/preserve evidence from Harris's person following the attack.

    h.  Defendants failed to take any corrective and preventive measures after Harris wrote several sexually explicit notes and provided them to female staff—notes which foreshadowed Harris's inevitable attack on a female staff member.

**2023 CV 00834**

81.     Under prong two, Defendants created a special danger to Deputy Stone, separate from the public at large, by exposing her to an inmate, known to be dangerous, while in her place of employment at the Jail.

82.     Under prong three, Defendants posed the requisite culpability by acting with deliberate indifference because they were aware of the dangers posed by Rondell Harris, had ample time to deliberate on hos to prevent the danger, and still failed to take any actions. Defendant Kountz even placed a "Do not move" order on Harris in spite of all the warnings signs of impending danger.

83.     Defendants engaged in the above-mentioned adverse actions while acting under color of state law.

84.     Defendants were at all relevant times sufficiently empowered Mahoning County officials that their acts constitute the customs, policies, and practices of Mahoning County. Mahoning County is also responsible for training and supervising its employees in carrying out their duties in a lawful manner. Greene is the highest-ranking official in the Mahoning County Sheriff's Office and Cappabianca, Kountz, and Hood are the highest-ranking administrators in charge of the Jail. All are policymakers.

85.     As a direct and proximate result of these actions, Deputy Stone has suffered and will continue to suffer economic and non-economic damages for which the named Defendants are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

86.     Defendants' acts were malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

**2023 CV 00834**

**PRAYER FOR RELIEF**

For the reasons stated above, Plaintiff respectfully requests the following relief from the Court:

A.   Declare that Defendants' acts and conduct constitute violations of federal and state law and the United States Constitution;

B.   Enjoin Defendants from retaliating against Stone;

C.   Enter judgment in Stone's favor on all claims for relief;

D.   Award Stone full compensatory damages, economic and non-economic, including, but not limited to, damages for back pay, front pay, pain and suffering, mental anguish, emotional distress, and trauma that she has suffered and is reasonably certain to suffer in the future;

E.   Award Stone punitive damages as appropriate for all intentional and malicious violations of federal and state law and constitutional rights;

F.   Award pre-judgment and post-judgment interest at the highest lawful rate;

G.   Award Stone her reasonable attorney fees, expert fees, and all other costs and expenses of this suit;

H.   Award all other relief in law or equity to which Stone is entitled and that the Court deems equitable just, or proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues within this complaint.

Dated: May 3, 2023                                    Respectfully submitted,

*/s/ Subodh Chandra*                                  *Per consent*
Subodh Chandra (0069233)                              Martin P. Desmond (0077377)
Donald P. Screen (0044070)                            Attorney at law
THE CHANDRA LAW FIRM LLC                              P.O. Box 14052
The Chandra Law Building                              Youngstown, OH 44514
1265 West 6th Street, Suite 400                       330.559.4505 (p)
Cleveland, Ohio 44113                                 Mpmd4@hotmail.com
216.578.1700 (p) / 216.578.1800 (f)
Subodh.Chandra@ChandraLaw.com                         *Attorneys for Plaintiff Mary Stone*
Donald.Screen@ChandraLaw.com                          *(Pseudonym)*

**2023 CV 00834**

ELECTRONICALLY FILED
2023 May 04 PM 3:55
Anthony P. Vivo, CLERK OF COURT - MAHONING

IN THE MAHONING COUNTY
COURT OF COMMON PLEAS

| | |
|---|---|
| **Mary Stone** (Pseudonym) Plaintiff, v. **Mahoning County,** *et al.* | Case No. 2023-CV-00834 Judge Anthony Donofrio |

**PLAINTIFF'S MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM**

Plaintiff Mary Stone respectfully moves for leave to proceed in this matter under a pseudonym. Her case concerns a matter of the utmost, sensitive intimacy—painful details of a sexual assault by a jail inmate, from which she has yet to recover (and perhaps never will). Plaintiff assumes great risk in seeking justice. A memorandum in support follows.

**MEMORANDUM IN SUPPORT**

**I.     Issue Presented**

In deciding whether to allow plaintiffs to proceed pseudonymously, courts consider if the suit involves information "of the utmost intimacy," whether the Plaintiff is challenging government activity, and Plaintiff's risk of retaliation in filing the suit under their name. Courts also weigh Plaintiff's interest in privacy against both Defendants' interest in disclosure and the public's interest in open proceedings. Central to Plaintiff's Complaint is her survival of a violent assault and rape. Plaintiff's suit puts her at significant risk of reputational harm, social opprobrium, and retaliation. Plaintiff's identity is already known to Defendants and allowing her to proceed under a pseudonym would not obstruct the public's interests in her case. Media have already respected her anonymity as

**2023 CV 00834**

a crime victim. The question before this Court is whether, balancing the considerations and interests above, Plaintiff may proceed under a pseudonym.

## II.    Introduction and Factual Background

On May 3, 2023, Plaintiff Stone filed a Complaint in this Court (*Mary Stone v. Mahoning County, et al.*, 2023-CV-00834) which necessarily includes graphic details of the assault and the events that led up to it. Those allegations are incorporated by reference. To ensure Plaintiff may proceed safely, without jeopardizing her recovery (both personal and economic), and without assuming any greater risk of reputational harm and retaliation than is unavoidable, she requests to proceed under the pseudonym Mary Stone.

## III.    Law and Argument

Ohio courts routinely allow parties to proceed using pseudonyms—often with little or no analysis of the issue. *See, e.g., Doe v. Shaffer,* 90 Ohio St.3d 388, 389 n. 1 (2000); *Doe v. George,* 12th Dist. Warren No. CA201 l-03-022, 2011 WL 6923156 (Dec. 30, 2011), at *1 (allowing but not commenting on plaintiffs' use of pseudonyms); *Doe v. Trumbull Cnty. Children Servs. Bd.,* 11th Dist. Trumbull No. 2004-T-0034, 2005 WL 1075785 (May 6, 2005), *1 (noting the plaintiff was proceeding under a pseudonym).

Although the practice of proceeding under a pseudonym is well established in Ohio, neither the Ohio Supreme Court[1] nor any Ohio appellate court has yet addressed a challenge to this practice." *Doe v. Bruner,* 12th Dist. Clinton No. CA2011-07-013, 2012 WL 626202, at *1. Because of the lack of authority on this issue under Ohio law, this Court may, but is not required to, look to federal law. *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St. 3d 231, 236 (2013) ("[W]hile not controlling, [federal law] is persuasive authority in interpreting a similar Ohio rule.").

---

[1] Where applicable, Plaintiff acknowledges *State ex rel. Cincinnati Enquirer v. Shanahan,* 166 Ohio St.3d 382 (2022), a factually dissimilar case in which the Ohio Supreme Court distinguished *Bruner* in ways mostly irrelevant to Plaintiff's suit.

**2023 CV 00834**

The decision about whether to allow plaintiffs to pursue claims pseudonymously is subject to an abuse-of-discretion standard.[2] Upon review, a trial court's ruling on a party's request to proceed pseudonymously will not be overturned absent an abuse of discretion, which requires a showing that "there is no sound reasoning process to support the judge's decision." *Compston v. Automanage, Inc.,* 79 Ohio App.3d 359, 367 (12th Dist. 1992); *Hall v. Johnson,* 90 Ohio App.3d 451,455 (1st Dist. 1993).

In "exceptional circumstances," courts, including the Sixth Circuit, have permitted plaintiffs to proceed pseudonymously when "privacy interests substantially outweigh the presumption of open judicial proceedings." *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004).

Courts have identified numerous factors relevant to balancing a plaintiff's privacy interests against the presumption of openness. All federal circuits weigh the anonymous party's privacy interest against the opposing party's interest in disclosure. The second, seventh, and ninth circuits consider both the public interest in disclosure and any prejudice to the opposing party. In balancing these concerns, the trial court "should carefully review all the circumstances of a given case." *Doe v. Bruner* at *2 (quoting *Doe v. Frank,* 951 F.2d 320, 323, 11th Cir. 1992).

In *Porter*, the Sixth Circuit identified four concerns for consideration:

- Whether the Plaintiff seeking anonymity is seeking to challenge governmental activity;
- Whether prosecution of the suit will compel Plaintiff to disclose information "of the utmost intimacy";
- Whether the litigation compels Plaintiff to disclose an intention to violate the law, thereby risking criminal prosecution;
- Whether the Plaintiff is a minor. *Doe v. Porter* at *560, citing *Doe v. Stegall*, 653 F.2d 180, 185–86 (5th Cir. 1981).

---

[2] In *State ex rel. Cincinnati Enquirer v. Shanahan*, the court acknowledged that on appeal, courts regularly review orders granting or denying a party's motion to proceed pseudonymously for an abuse of discretion but rejected the argument (not made here by Deputy Stone) that their scope of review was confined to assessing abuses of discretion when the cases at hand are original actions, not appeals. The court opted to consider *de novo* whether it was appropriate for the plaintiff to proceed using a pseudonym, which Deputy Stone invites.

**2023 CV 00834**

The first two concerns favor pseudonymity here.

**A.  Plaintiff is disclosing information of the utmost intimacy.**

Plaintiff's path to filing this action began with the sexual assault she endured—these harrowing details qualify as "information of the utmost intimacy." *Doe v. Bruner*, 2012 WL 626202, at *3, citing *Wolowitz, E.D. Michigan* No. 01–73907, 2002 WL 130614.2002 WL 130614. Plaintiff is concerned, reasonably, that going public as a survivor of sexual assault jeopardizes her reputation and increases her risk of victimization, thus posing a threat to her physical and mental safety.

The prospect of moving forward with litigation is daunting enough for many survivors, and courts have also noted that denying the use of pseudonyms for sexual assault victims has discouraged them from proceeding with litigation altogether. Defendants can weaponize private details and the threat of building a public record to pressure plaintiffs into settling or dropping their cases. The Sixth Circuit has acknowledged the risks posed to the victims of sexual assault who pursue litigation, and recognizing the sensitive and highly personal nature of the topic has permitted survivors to proceed under pseudonymity. *See, e.g., Doe v. Dabbagh*, No. 15-cv-10724, 2015 WL 13806540, at *2 (E.D. Mich. May 28, 2015); *NMIC Ins. Co. v. Smith*, No. 2:18-cv-533, 2018 WL 7859755, at *2 (S.D. Ohio Oct. 24, 2018); *Doe v. Kenyon College*, No. 20-cv-4972-MHW-CMV, at 3 (S.D. Ohio Sept. 24, 2020); *Doe v. Mitchell*, No. 2:20-cv-00459, 2020 WL 6882601, at *7 (S.D. Ohio Nov. 24, 2020), report & recommendation adopted, 2021 WL 2313436 (S.D. Ohio June 7, 2021); Doe v. Streck, 522 F. Supp. 3d 332, 334 (S.D. Ohio 2021); *Doe v. Athens County*, No. 2:22-cv-00855-EAS-CMV, at 2 (S.D. Ohio Mar. 15, 2022); *Doe v. FedEx Ground Package Sys., Inc.*, No. 3:21-cv-00395, 2021 WL 5041286, at *3, *9 (M.D. Tenn. Oct. 29, 2021) (accepting pseudonymity for plaintiff who alleged rape).

**2023 CV 00834**

**B. Plaintiff is challenging government activity, thereby exposing her to significant risk of retaliation.**

While not enough to warrant pseudonymity stand-alone, courts strongly consider whether a case involves an individual challenging government activity. *Doe v. Stegall* at *185, referencing *Southern Methodist University Ass'n v. Wynne & Jaffe*, 599 F.2d at 712-13 nn.8, 9, 10, 11 & 12. A plaintiff seeking to proceed anonymously for fear of retaliation must show that the *filing of the lawsuit* causes a risk of retaliation. *State ex rel. Cincinnati Enquirer v. Shanahan* at **389, citing: *Doe v. Porter* at **560–62; *Sealed Plaintiff v. Sealed Defendant #1,* 537 F.3d 185, 190 (2d Cir. 2008) at *190; *Doe v. Stegall*, 653 F.2d at 186; *Doe v. Bruner* at ¶ 9.

Plaintiff's challenge to government activity warrants consideration of pseudonymity given the disproportionate power certain County officials may yield to retaliate against an individual and "subject them to considerable harassment." *Doe v. Porter* at *560, citing *Doe v. Stegall*. Plaintiff alleges a disturbing pattern of government misconduct in her Complaint, and arming certain Defendants with the ability to publicize Plaintiff's identity enhances their capacity to retaliate. Plaintiff's fears are reasonable—the threat of retaliation against her is severe. That threat exists for all individuals who dare to challenge their government, most of whom do not qualify for pseudonymity. But Plaintiff Stone is particularly vulnerable to this threat due to the sensitive nature of her claims,[3] which further shifts the balance of considerations in favor of pseudonymity.

**C. Allowing Plaintiff to proceed pseudonymously would not harm Defendants.**

The need for pseudonymity stems first and foremost from the sexual assault and rape. There is no disputing the details of inmate Rondell Harris's assault of Deputy Stone —Harris pleaded

---

[3] The Ninth Circuit has identified three factors that courts should consider when a plaintiff alleges that the use of a pseudonym is necessary to protect against a threat of retaliation: "(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, and (3) the anonymous party's vulnerability to such retaliation." *State ex rel. Cincinnati Enquirer v. Shanahan* at *391, citing *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000) at *1068.

guilty on Monday, May 1, 2023 and received a sentence of at least 26 years in prison. Permitting Plaintiff to proceed under a pseudonym in this action would not deprive Defendants of sufficient information to defend against Plaintiff's charges. Defendants know Plaintiff's identity well.

### D.  Going public threatens Plaintiff's economic prospects.

Plaintiff's future and ability to move on from this experience with dignity is paramount. A painful truth is that the enduring stigma around sexual assault could deter future employers. This would be true for field or workplace, but Plaintiff has built her career in law enforcement. There is a second painful truth: historically, women in law-enforcement have had to overcome barriers not faced by their male counterparts. Their strength and "toughness" are more frequently questioned, however unduly. It is a reasonable concern that identifying Plaintiff as a survivor of sexual assault, intersected with biases she faces as a woman in a male-dominated field like law-enforcement, could further impede her ability to move forward in her career on her merits as an officer. Moreover, Plaintiff seeks to avoid *any* differential treatment because of this experience, positive or negative. Plaintiff does not want to be followed by sympathetic glances or bombarded by offerings of support as she seeks to move forward, as well-intentioned as those gestures may be.

### E.  Plaintiff's privacy interest substantially outweighs the public's interest in open proceedings.

The public has a right to know who is using their courts. *State ex rel. Cincinnati Enquirer v. Shanahan* at *389, citing *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir.1997). Upon reading her Complaint, the public will, regardless of the pseudonym, understand who Plaintiff is, why she has brought the matter before the Court, and why she has requested to do so pseudonymously. The other public interest in open proceedings, scrutinizing government activity and permitting Plaintiff to proceed pseudonymously, will not impede the public's ability to do so.[4]

---

[4] "The public right to scrutinize governmental functioning, 100 S.Ct. at 2827, is not so completely impaired by a grant of anonymity to a party as it is by closure of the trial itself. Party anonymity does not obstruct the

**2023 CV 00834**

Permitting Plaintiff to proceed under pseudonym protects her personal privacy while still permitting public scrutiny of the allegations of the Complaint.

## IV.     Conclusion

Plaintiff respectfully requests that this Court grant her motion for leave to proceed under the pseudonym "Mary Stone." Plaintiff's experience of a matter of "utmost intimacy" warrant pseudonymity here. Plaintiff has great interest in protecting her physical safety, mental wellbeing, and economic future, while there is nothing to be gained by disclosure of her identity.

Plaintiff is, of course, willing to disclose her name to the Court under a protective order. Plaintiffs' interest is only to avoid her name becoming part of the public record. If the Court does not permit the suit to proceed pseudonymously, Plaintiff requests leave to amend her complaint to include her name (though she hopes it does not come to that).

Dated: May 4, 2023                                          Respectfully submitted,

/s/ Subodh Chandra                                          Per consent
Subodh Chandra (0069233)                                    Martin P. Desmond (0077377)
Donald P. Screen (0044070)                                  Attorney at law
THE CHANDRA LAW FIRM LLC                                    P.O. Box 14052
The Chandra Law Building                                    Youngstown, OH 44514
1265 West 6th Street, Suite 400                             330.559.4505 (p)
Cleveland, Ohio 44113                                       Mpmd4@hotmail.com
216.578.1700 (p) / 216.578.1800 (f)
Subodh.Chandra@ChandraLaw.com                               *Attorneys for Plaintiff Mary Stone*
Donald.Screen@ChandraLaw.com                                *(Pseudonym)*

---

public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name." *Doe v. Stegall,* 653 F.2d 180, 185 (5th Cir. 1981), quoting *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 2829 & n.17, 65 L.Ed.2d 973 (1980).

**2023 CV 00834**

## Certificate of Service

A courtesy copy of this motion will be forwarded today by email to the following counsel who have identified themselves as counsel for Mahoning County and are also believed to likely be counsel for the individual Defendants:

Daniel Downey <DDowney@fisheldowney.com>
Angelica Jarmusz <ajarmusz@fisheldowney.com>

Rmi

ELECTRONICALLY FILED
2023 May 12 PM 12:23
Anthony P. Vivo, CLERK OF COURT - MAHONING

## IN THE COURT OF COMMON PLEAS
## MAHONING COUNTY, OHIO

| | |
|---|---|
| **Mary Stone,** | ) **Case No. 2023 CV 834** |
| | ) |
| **Plaintiff,** | ) Judge Anthony Donofrio |
| | ) |
| **vs.** | ) Magistrate Nicole Alexander |
| | ) |
| **Mahoning County, et al.,** | ) **Judgment Entry** |
| | ) |
| **Defendants.** | ) |

The Court hereby recuses itself from this case and respectfully requests the Administrative Judge of the Mahoning County Court of Common Pleas to immediately reassign this case by lot.

Judge Anthony Donofrio

**2023 CV 00834**